FILED

2005 Oct-25  PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| WILDRIDGE, LLC and GREG BRAGG,     ) | |
| ) | |
| Appellants,     ) | |
| ) | |
| v.     ) | CIVIL ACTION NO. 02-G-2435-S |
| ) | |
| MAX C. POPE, Trustee for ESTATE of     ) | |
| WILD CANYON, LLC,     ) | |
| ) | |
| Appellee.     ) | |
| ) | |

## MEMORANDUM OPINION

This cause is before the court on appeal by Wildridge, LLC, and Greg Bragg (Wildridge) from the judgment entered by the United States Bankruptcy Court for the Northern District of Alabama in favor of the Trustee for the Estate of Wild Canyon, LLC, (Trustee) on Count Six of the First Amended and Restated Complaint (Appeal Tab 27–hereinafter AP #) and on the Counterclaim (AP 33).  This court has reviewed the record, the submissions of the parties, and the applicable law, and finds that the decision of the Bankruptcy Court is due to be reversed as to Count Six and affirmed as to the Counterclaim.

## Issues on Appeal

Whether the rights granted by the sewer impact permits made the subject of this case were appurtenances of the real property conveyed and therefore flowed with the sale of the property.

Whether the grantee in the subject sale may recover attorneys' fees and other costs from the Estate and the Trustee for breach of warranty of quiet enjoyment.

## Holdings

The court finds that the rights granted by the sewer impact permits made the subject of this case were appurtenances of the real property at the time the real property was conveyed to the Appellants.  The court therefore holds that the decision of the Bankruptcy Court is due to be reversed on its ruling on Count Six of the First Amended and Restated Complaint (AP 27).  As to the Counterclaim, the court finds that the Bankruptcy Court's ruling is due to be affirmed.

## Standard of Review

Rulings of law by the Bankruptcy Court are reviewed by this court *de novo.  In re Williams*, 216 F. 3d 1295 (11th Cir. 2000).  The Bankruptcy Court's rulings on questions of fact are to be upheld unless they are clearly erroneous.  *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).

## Facts

This case arises out of the sale by public auction of a parcel of real property in Homewood, Alabama, on October 12, 2000.  This sale was made pursuant to the First Amended Plan of Liquidation in the Chapter 11 bankruptcy case filed by Wild Canyon, LLC, (Debtor) in the United States Bankruptcy Court for the Northern District of Alabama, Southern Division.  The Plan and the First Amended Plan were drafted by counsel for the estate of Kenneth Harris, a minority owner (approximately fifteen to twenty percent) of Wild Canyon LLC, which filed the bankruptcy petition.  Wild Canyon

-2-

LLC's only tangible asset was a piece of real property in Jefferson County.  The property had on it an 80-unit apartment complex project under development by Wild Canyon, LLC.

The Bankruptcy Court approved the First Amended Plan.  The parcel was sold under this plan which stated in part: "Title to the Project [the Wild Canyon apartment complex project under development and the property on which it was located] shall be transferred by statutory warranty deed.  The sale shall be free and clear of all liens and claims pursuant to 11 U.S.C. § 363 with any such liens or claims attaching to the proceeds of the sale."  AP 79, p. 12.

The property was bought at auction on October 12, 2000, for $ 2,100,000.00 by Greg Bragg and Henry Bragg.  The property was transferred by statutory warranty deed to Wild Ridge, LLC,[1] by Wild Canyon, LLC, on November 9, 2000.  The deed stated in part:

> [T]he Grantor does hereby grant, bargain, sell and convey unto the said Grantees, all of the Grantor's right, title and interest in and to the following-described non-homestead real property located in Jefferson County, Alabama. . . **together with all of the appurtenances, fixtures, and improvements thereon**. **This conveyance is made free and clear of all liens and claims** pursuant to 11 U.S.C. § 363 pursuant to the Plan. . . .

Defendant's Trial Exhibit 15 (emphasis added).

Prior to the auction Gregg Bragg inspected the property and found that "all the man holes were in place and the main lines in and all the laterals stubbed in."  Trial transcript, p. 248.  The lines were physically connected to the sewer trunk.  Some of the

---

[1] Greg Bragg is a managing member of Wild Ridge, LLC.

interior fixtures were also already installed.  *Id.* at 248-49.  The plumbing contractor on

the Project testified at trial that, at the time of the sale, all buildings were stubbed in and

ready to be connected to the sewer system pending approval by Jefferson County

inspection services.  Keller testimony, Trial Transcript, pp. 163-173.  Mr. Bragg also

testified that prior to the auction he verified through Jefferson County that Sewer Impact

Permit Fees of $80,150.00 had been paid by the Project's developers.  He testified at

trial that this knowledge caused him to increase his bid price.  Trial transcript, pp. 245-

246.  David Anderson, counsel for the Harris Estate, testified, "The auction resulted in

an offer significantly higher than we thought we would get for the project. . . ."  Trial

transcript, p. 20.

        At some point after the auction and the transfer, Dennis Schilling, general

counsel for the Chapter 7 Trustee,[2] noticed that $80,150.00 in Sewer Impact Permits

related to the property had been purchased on November 4, 1998, by Wild Canyon

through its agent, Sherrod Building Company.  Plaintiff's Trial Exhibit 12.  Mr. Schilling

contacted Jefferson County Attorney Andy Strickland requesting a refund of this

amount.  According to Mr. Schilling's testimony at trial, Mr. Strickland informed him on

December 20, 2000, that the Sewer Impact Permit payments were not refundable

because they ran with the land and had thus been transferred with the land at the

auction sale.  Trial Transcript, p. 70

        On December 27, 2000, Mr. Schilling filed the initial Complaint in an Adversary

Proceeding in the Bankruptcy Court against the Purchasers.  An Amended and

---

        [2] By the terms of the Plan and by operation of law, the bankruptcy case was converted to a
Chapter 7 proceeding following the auction of the secured asset.  AP 79, p. 15.

Restated Complaint was later filed.  The Trustee sought return of the value of the permits from the Purchasers, Wild Ridge, LLC, and Greg Bragg, claiming, inter alia, that the Purchasers had been unjustly enriched by retaining the use and value of these permits without making additional payment beyond the auction price.  The Purchasers counterclaimed against the Trustee and the Estate for breach of warranty of title.

The Bankruptcy Court found in favor of the Trustee on the basis of unjust enrichment and explicitly declined to reach the question of whether the permits ran with the land.  Bankruptcy Court Opinion, p. 10, n. 14.  The Bankruptcy Court further denied the Purchaser's counterclaim for breach of warranty of title against the Estate and the Trustee.

<u>Findings</u>

The court finds that the Bankruptcy Court erred as a matter of law in applying the concept of meeting of the minds and unjust enrichment to reach its judgment.  The Bankruptcy Court further erred as a matter of law in its failure to find that the rights granted by the sewer impact permits were appurtenant to this property and ran with the transfer of title.

The attorneys for both sides argued at great length in their submissions to this court.  The court carefully reviewed the Record and all submissions and found the issues to be more straightforward and rudimentary than the length of the arguments would indicate.  The court will cut through the thicket and reach only those issues necessary for decision without snagging on irrelevant brambles.

The Bankruptcy Court bypassed the threshold question.  The initial legal issue is whether the rights granted through the sewer impact rights purchased by the Debtor were appurtenant to the real property sold.  The Bankruptcy Court explicitly declined to reach the question of whether the rights ran with the land.  Bankruptcy Court Opinion, p. 10, n. 14.  Without a ruling on this point, a legally sound judicial decision cannot be made.  Whether the rights are appurtenant and therefore realty or in gross and therefore personalty dictates the applicable law.  Leapfrogging over this determination, assuming the rights to be personalty led the Bankruptcy Court to circular reasoning that begged the ultimate question–i.e, assuming the answer to be personalty without conducting the necessary analysis led the court to proceed from an incorrect starting point through a legally erroneous analysis to an incorrect conclusion.

A basic tenet of property law is that rights which can be exercised only through possession of the property flow with the title to the property or, in other words, are considered appurtenant to the property.  The traditional term *a permanent servitude upon the land* captures the concept succinctly.  *See, McMahon v. Williams*, 79 Ala. 288 (1885); *Virgin v. Garrett,* 233 Ala. 34, 169 So. 711 (Ala. 1936).  These rights act to enhance the use of all grantees in perpetuity.  The law of Alabama has long favored finding easements and analogous property-use rights to be appurtenant.  *Id.*  In doubtful cases, easements are never presumed to be personal when they can be found to be appurtenant.  *McMahon v. Williams*, 79 Ala. 288 (1885).

The sewer impact fees at issue were paid by the Debtor for the right to cause an impact upon Jefferson County's water treatment facilities by its development of the Wild

Canyon apartment complex with the many plumbing fixtures it would contain.[3]  The right

to cause an impact upon particular water treatment facilities from a specific location

cannot be found, by virtue of common sense if nothing else, to be other than

inextricably bound to the possession and use of the particular property.  The sewer

impact rights at issue did not belong to Wild Canyon as personalty.  Wild Canyon could

not have taken these rights and sold them apart from the land.  Apart from this specific

parcel of land, they had no value.  The rights granted by a particular impact permit are

unique to that parcel and cannot be used anywhere else.  Testimony of Jefferson

County Attorney Andy Strickland, Trial transcript, pp. 111-12.  These permits could not

have been placed on the open market and hawked as $80,150.00 worth of sewer

impact to some enterprising developer who wanted to build an apartment complex

somewhere that the county would not allow additional impact on the sewer system or

even to some enterprising developer who wanted to build an apartment complex

somewhere that the county would allow additional impact on the sewer system.

By the  undisputed testimony of the Assistant Jefferson County Attorney, Charles

Wagner, the County's practice has always been to consider sewer impact rights to be

property rights that run with the land.  Trial transcript, pp. 116-17, 133.  They are not

exclusive to the original purchaser nor are they temporary.  The plain reading of the

Ordinance reveals that subsequent purchasers of the property are not required to pay

an impact fee, unless additional fixtures are added.  Jefferson County Sewer

Use/Pretreatment Ordinance, Article VII.  Liens against the land arise for initial

---

[3] These permits are not connection fees which are other additional fees billed and paid separately and are not at issue here.

nonpayment or for nonpayment for increased impact created by the addition of fixtures.[4]
The County may foreclose when the liens are not paid.  Strickland testimony, Trial
transcript, pp. 108-10.  Once purchased, these rights vest in the land, subject to limited
right of refund under the applicable ordinance.  Under the Jefferson County Sewer
Use/Pretreatment Ordinance, Article VII, C.11, "[u]pon proper application by the
permitee, the County will refund sewer impact connection fees **for fixtures which have
not been installed**" (emphasis added).  The consistent practice of Jefferson County
since the passage of the Ordinance in 1982 has been to treat the fees as non-
refundable once stub-in has occurred.

The issue of refund, although addressed at length in counsel's submissions, is
not critical to the ultimate issue before the court.  No evidence was adduced to support
a finding that the fees were refundable at the time of the sale.  Further, whether a fee
for a right not exercised is refundable does not affect the right's nature as an
appurtenance or personalty once exercised.  The exercise of a right may change its
nature, just as affixing an item such as a cabinet to the wall of a house may change the
cabinet from personalty to realty appurtenance.

The uncontroverted testimony of Mr. Bragg and the Project plumbing contractor,
Mr. Keller, established that all fixtures were "installed" for purposes of sewer connection
at the time of the auction sale.  Keller testimony, Trial Transcript, pp. 163-173; Bragg
testimony, Trial transcript, p. 248-49.  Further, Mr. Schilling, the Debtor's Chapter 7

---

[4] Transferring this property without the impact rights would have constituted a transfer with a lien upon the property in breach of the terms of the statutory warranty deed which required a transfer free of all liens and encumbrances.

Trustee, testified that, prior to his filing this action, he was informed by the Jefferson County Attorney the fees were not refundable, in keeping with the County's interpretation and practice since the enactment of the Ordinance.  Schilling testimony, Trial Transcript, p. 70.  Once the application was made, fees were paid, and lateral lines and sewage drainage pipes were installed (stub-in) installed, the fees were not refundable under long-established, unvaried county practice.  Cleghorn testimony, Trial transcript, p. 229.

The County's enforcement practices have not changed over the life of the Ordinance.  Strickland testimony, Trial transcript, pp. 108-10; Wagner testimony, Trial transcript, pp. 116-17, 133.  Impact rights have consistently been treated as vested in the real property upon payment of the fees and installation of the fixtures as that term is commonly used in the construction business.  The fees are non-refundable at this point. The rights become appurtenant to the land and flow with the title to the land.

The interpretation and application of the administrative agency charged with the implementation of a statute or ordinance is taken by the courts as indicative of legislative intent.  *State v. Pettaway*, 794 So. 2d 1153, 1157 (Ala. Civ. App. 2001); *See,* 3A *Sutherland Statutory Construction* § 66:4 (6th ed., 2005).  A longstanding implementation is accorded a strong presumption of correctness and great weight. *Glencoe Paving Co., Inc. v. Graves*, 94 So. 2d 872, 876 (Ala. 1957); *State v. Pettaway*, 794 So. 2d 1153, 1157 (Ala. Civ. App. 2001).  If an interpretation is reasonable, the courts generally accept it.  *Id.*  In the case at bar, Jefferson County's interpretation that

these impact rights run with the land, once paid and vested by reaching a certain point in construction, is reasonable and consistent with basic property law principles.

Further, no terms affecting the County's implementation practices have been changed by any amendments or re-adoptions of this ordinance throughout its two decade life.  Trial transcript. P. 232 (testimony of Tommy Cleghorn, Jefferson County Sewer Service Supervisor).  Lack of alteration by the drafting body is another indication of the administrative agency's practice being in accord with the legislative intent.  *See, Ex parte Louisville & Nashville Railroad Co.,* 398 So. 2d 291, 296 (Ala. 1981).

Having determined that the sewer rights are appurtenant to the real property, the court must next determine whether these rights were subject to the sale.  The court finds that they were.  All interests in the real property were sold at the auction, and no exceptions existed.

The collateral interests of the Debtor's two secured creditors, Colonial Bank and NewSouth Federal Savings Bank were auctioned on October 12, 2000.  These banks held secured mortgages on the Wild Canyon property.  By law, a secured creditor's claim is secured up to the value of its collateral.  11 U.S.C. § 506(a).  Accordingly, Colonial, first mortgagee, and NewSouth, second mortgagee, would be paid up to the value of their collateral from the proceeds of the sale and any shortfall in the price received would leave remaining debt owed them.[5]  This remaining debt would then be treated as unsecured.  All secured collateral was thus required to be made the subject of the auction.  Secured creditors typically seek to have all possible collateral included

---

[5] The entire proceeds of the sale went to Colonial with a portion left unpaid.  This unpaid excess became an unsecured claim.  NewSouth's entire claim was relegated to unsecured status.

in this first priority classification to prevent any of their interests not being made subject

of such sale and being dropped to unsecured status.

In reference to real property, the Colonial mortgage stated in part:

all rights, privileges, tenements and appurtenances thereunto belonging or in anywise appertaining to said real estate. . . all of which shall be deemed realty and conveyed by this mortgage.

R. CL. 32 (emphasis added).

In reference to real property, NewSouth's mortgage stated in part:

all rights, hereditaments and appurtenances in anywise appertaining or belonging thereto. . . which are necessary or useful for complete and comfortable use and occupancy of the Project . . . all contract and subcontracts and subcontracts relating to the Project, all deposits. . .funds, accounts, contract rights, instruments, documents, general intangibles. . . all permits, licenses. . . and other rights and privileges obtained in connection with the Project, . . . and all other interests of every kind and character which Mortgagor now has or at any time hereinafter acquires in and to the above-described real and personal property all property which is used or useful in connection therewith, including rights of ingress and egress, easements, licenses. . . . It is agreed hereby that to the extent permitted by law, the foregoing personal property and fixtures are to be deemed and held to be part of and affixed to the Real Estate.

R. CL 32.  Additionally, in NewSouth's Revolving Credit and Security Agreement with

Wild Canyon, in which the Project is the secured collateral, sewer rights are specifically

included in Section 4.03(D).  R. CL 32.  No exceptions regarding sewer rights were

made in any document related to the secured collateral interests of Colonial or

NewSouth in the mortgage instruments or the bankruptcy case filings, including those

prepared or reviewed by attorneys for the mortgagees.  The rights at issue had vested

in the land at the time of the auction and had become appurtenant to the land.  These

rights flow in perpetuity and will inure to the benefit of all future purchasers of the property.

Accordingly, the Bankruptcy Court's decision as to Count Six of the First Amended and Restated Complaint is due to be reversed.  The Estate is not entitled to any payment from Appellants for the cost of impact fees paid in relation to Debtor's Wild Canyon Project property sold at public auction in the course of this bankruptcy case.

As to the denial of the Appellants' Counterclaim against the Estate and the Trustee for breach or warranty of title, the court finds that the Bankruptcy Court's decision is due to be affirmed.

An Order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE and ORDERED this day, October 25, 2005.


_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.